## ARKANSAS BAR ASSOCIATION,
Petitioner

### 77-330

### July 17, 1978

In re: Amendments to the Code of Professional Responsibility and Canons of Judicial Ethics.

*Jeff Starling*, of *Coleman, Gantt, Ramsay & Cox*, and *W. Russell Meeks III*, of *Barber, McCaskill, Amsler & Jones*, for petitioner, Arkansas Bar Association.

Legal Aid Bureau of Central Arkansas, petitioner, pro se.

*Robert M. Cearley, Jr.*, for Arkansas affiliate of American Civil Liberties Union.

### PER CURIAM

After considering the petition of the Arkansas Bar Association and the responses, and petitions thereto filed by the Attorney General, the American Civil Liberties Union, The Legal Aid Bureau of Central Arkansas and ACORN, ACR and the Arkansas AFL-CIO, we have made the following amendments to the Code of Professional Responsibility to-wit:

1. *Ethical Consideration 2-2,* is amended to read as follows, in its entirety: The legal profession should assist nonlawyers to recognize legal problems because such problems may not be self-revealing and often are not timely noticed. Therefore, lawyers should encourage and participate in educational and public relations programs concerning our legal system with particular reference to legal problems that frequently arise. Preparation of advertisements and professional articles for lay publications and participation in seminars, lectures, and civic programs should be motivated by a desire to educate the public to an awareness of legal needs rather than to obtain publicity for particular lawyers.

2. *Ethical Consideration 2-3*, is amended to read as follows, in its entirety: Whether a lawyer acts properly in volunteering in-person advice to a nonlawyer to seek legal services depends upon the circumstances. The giving of advice that one should take legal action could well be in fulfillment of the duty of the legal profession to assist nonlawyers in recognizing legal problems. The advice is proper only if motivated by a desire to protect one who does not recognize that he may have legal problems or who is ignorant of his legal rights or obligations. It is improper if motivated by a desire to obtain personal benefit, secure personal publicity, or cause legal action to be taken merely to harass or injure another. A lawyer should not initiate an in-person contact with a non-client, personally or through a representative, for the purpose of being retained to represent him for compensation.

3. *Ethical Consideration 2-4*, is amended to read as follows, in its entirety: Since motivation is subjective and often difficult to judge, the motives of a lawyer who volunteers in-person advice likely to produce legal controversy may well be suspect if he receives professional employment or other benefits as a result. A lawyer who volunteers in-person advice that one should obtain the services of a lawyer generally should not himself accept employment, compensation, or other benefit in connection with that matter. However, it is not improper for a lawyer to volunteer such advice and render resulting legal services to close friends, relatives, former clients (in regard to matters germane to former employment), and regular clients.

4. *Ethical Consideration 2-5* is amended to read as follows, in its entirety: A lawyer who writes or speaks for the purpose of educating members of the public to recognize their legal problems should carefully refrain from giving or appearing to give a general solution applicable to all apparently similar individual problems, since slight changes in fact situations may require a material variance in the applicable advice; otherwise, the public may be misled and misadvised. Talks and writings by lawyers for nonlawyers should caution them not to attempt to solve individual problems upon the basis of the information contained therein.

5. *Ethical Consideration 2-6* is amended to read as follows, in its entirety: Formerly a potential client usually knew the reputations of local lawyers for competency and integrity and therefore could select a practitioner in whom he or she had confidence. This traditional selection process worked well because it was initiated by the client and the choice was an informed one.

6. *Ethical Consideration 2-7* is amended to read as follows, in its entirety: Changed conditions, however, have seriously restricted the effectiveness of the traditional selection process. Often the reputations of lawyers are not sufficiently known to enable nonlawyers to make intelligent choices. The law has become increasingly complex and specialized. Few lawyers are willing and competent to deal with every kind of legal matter, and many nonlawyers have difficulty in determining the competence of lawyers to render different types of legal services. The selection of legal counsel is particularly difficult for transients, persons moving into new areas, persons of limited education or means, and others who have little or no contact with lawyers. Lack of information about the availability of lawyers, the qualifications of particular lawyers, and the expense of legal representation may lead nonlawyers to avoid seeking legal advice.

7. *Ethical Consideration 2-8,* is amended to read as follows, in its entirety: Selection of a lawyer by a nonlawyer should be made on an informed basis. Advice and recommendation of third parties — relatives, friends, acquaintances, business associates, or other lawyers — and disclosure of relevant information about the lawyer and his practice may be helpful. A nonlawyer is best served if the recommendation is disinterested and informed. In order that the recommendation be disinterested, a lawyer should not seek to influence another to recommend his employment. A lawyer should not compensate another person for recommending him, for influencing a prospective client to employ him, or to encourage future recommendations. Advertisements and public communications, whether in law lists, telephone directories, newspapers, other forms of print media, television or radio, should be formulated to convey only information that is necessary to make an appropriate selection. Such information

includes: (1) office information, such as, name, including name of law firm and names of professional associates; addresses; telephone numbers; credit card acceptability; fluency in foreign languages; and office hours; (2) relevant biographical information; (3) description of the practice, for example, one or more fields of law in which the lawyer or law firm practices; and (4) permitted fee information. Self-laudation should be avoided.

8. *Ethical Consideration 2-9,* is amended to read as follows, in its entirety: The lack of sophistication on the part of many members of the public concerning legal services, the importance of the interests affected by the choice of a lawyer and prior experience with unrestricted lawyer advertising, require that special care be taken by lawyers to avoid misleading the public and to assure that the information set forth in any advertising is relevant to the selection of a lawyer. The lawyer must be mindful that the benefits of lawyer advertising depend upon its reliability and accuracy. Examples of information in law advertising that would be deceptive include misstatements of fact, suggestions that the ingenuity or prior record of a lawyer rather than the justice of the claim are the principal factors likely to determine the result, inclusion of information irrelevant to selecting a lawyer, and representations concerning the quality of service, which cannot be measured or verified. Since lawyer advertising is calculated and not spontaneous, reasonable regulation of lawyer advertising to foster compliance with appropriate standards serves the public interest without impeding the flow of useful, meaningful, and relevant information to the public.

9. *Ethical Consideration 2-10* is amended to read as follows, in its entirety: A lawyer should ensure that the information contained in any advertising which the lawyer publishes, broadcasts, or causes to be published or broadcasted is relevant, is disseminated in an objective and understandable fashion, and would facilitate the prospective client's ability to compare the qualifications of lawyers available to represent him. A lawyer should strive to communicate such information without undue emphasis upon style and advertising stratagems which serve to hinder rather than to facilitate intelligent selection of counsel. Because technological change is

a recurrent feature of communications forms, and because perceptions of what is relevant in lawyer selection may change, lawyer advertising regulations should not be cast in rigid, unchangeable terms. Machinery is therefore available to advertisers and consumers for prompt consideration of proposals to change the rules governing lawyer advertising. The determination of any request for such change should depend upon whether the proposal is necessary in light of existing Code provisions, whether the proposal accords with standards of accuracy, reliability and truthfulness, and whether the proposal would facilitate informed selection of lawyers by potential consumers of legal service. Representatives of lawyers and consumers should be heard in addition to the applicant concerning any proposed change. Any change which is approved should be promulgated in the form of an amendment to the Code so that all lawyers practicing in the jurisdiction may avail themselves of its provisions.

10. *Ethical Consideration 2-11* is amended to read as follows, in its entirety: The name under which a lawyer conducts his practice may be a factor in the selection process. The use of a trade name or an assumed name could mislead nonlawyers concerning the identity, responsibility, and status of those practicing thereunder. Accordingly, a lawyer in private practice should practice only under a designation containing his own name, the name of a lawyer employing him, the name of one or more of the lawyers practicing in a partnership, or, if permitted by law, the name of a professional legal corporation, which should be clearly designated as such. For many years some law firms have used a firm name retaining one or more names of deceased or retired partners and such practice is not improper if the firm is a bona fide successor of a firm in which the deceased or retired person was a member, if the use of the name is authorized by law or by contract, and if the public is not misled thereby. However, the name of a partner who withdraws from a firm but continues to practice law should be omitted from the firm name in order to avoid misleading the public.

11. *Ethical Consideration 2-14* is amended to read as follows, in its entirety: In some instances a lawyer confines

his practice to a particular field of law. In the absence of state controls to insure the existence of special competence, a lawyer should not be permitted to hold himself out as a specialist or as having official recognition as a specialist, other than in the fields of admiralty, trademark, and patent law where a holding out as a specialist historically has been permitted. A lawyer may, however, indicate in permitted advertising, if it is factual, one or more particular areas of fields of law in which he practices. A lawyer practicing in a jurisdiction which certified specialists must also be careful not to confuse nonlawyers to his status. If a lawyer discloses areas of law in which he practices or to which he limits his practice, but is not certified in Arkansas, he, and the designation authorized in Arkansas, should avoid any implication that he is in fact certified.

12. *Disciplinary Rule 2-101* is amended to read, in its entirety, as follows: Publicity:

(A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.

(B) In order to facilitate the process of informed selection of a lawyer by potential consumers of legal services, a lawyer may broadcast, subject to DR 2-103, the following information in the geographic area or areas in which the lawyer resides or maintains offices or in which a significant part of the lawyer's clientele resides, provided that the information disclosed by the lawyer in such publication or broadcast complies with DR 2-101(A).

(1) Name, including name of law firm and names of professional associates; addresses and telephone numbers;

(2) One or more fields of law in which the lawyer or law firm practices or a statement that the lawyer

or law firm specializes in a particular field of law practice, to the extent authorized under DR 2-105;

(3) Date and place of birth;

(4) Date and place of admission to the bar of state and federal courts;

(5) Schools attended, with dates of graduation, degrees and other scholastic distinctions;

(6) Public or quasi-public offices;

(7) Military service;

(8) Legal authorships;

(9) Legal teaching positions;

(10) Memberships, offices, and committee assignments, in bar associations;

(11) Membership and offices in legal fraternities and legal societies;

(12) Technical and professional licenses;

(13) Memberships in scientific, technical and professional associations and societies;

(14) Foreign language ability;

(15) Names and addresses of bank references;

(16) With their written consent, names of clients regularly represented;

(17) Prepaid or group legal services programs in which the lawyer participates;

(18) Whether credit cards or other credit arrangements are accepted;

(19) Office and telephone answering service hours;

(20) Fee for an initial consultation;

(21) Availability upon request of a written schedule of fees and/or an estimate of the fee to be charged for specific services;

(22) Contingent fee rates subject to DR 2-106(C), provided that the statement discloses whether percentages are computed before or after deduction of costs; and that the client is responsible for the costs regardless of the outcome of the litigation.

(23) Range of fees for services, provided that the statement discloses that the specific fee within the range which will be charged will vary depending upon the particular matter to be handled for each client and the client is entitled without obligation to an estimate of the fee within the range likely to be charged, in print size equivalent to the largest print used in setting forth fee information;

(24) Hourly rate, provided that the statement discloses that the total fee charged will depend upon the number of hours which must be devoted to the particular matter to be handled for each client and the client is entitled to without obligation an estimate of the fee likely to be charged, in print size at least equivalent to the largest print used in setting forth the fee information;

(25) Fixed fees for specific legal services, which must be accompanied by a description of the services which shall not be misleading or deceptive, provided that the statement discloses that the quoted fee will be available only to clients whose matters fall into the services described and that the client is entitled without obligation to a specific estimate of the fee likely to be charged in print size at least equivalent to the largest print used in setting forth the fee information;

(C) Any person desiring to expand the information authorized for disclosure in DR 2-101(B), or to provide for its dissemination through other forums may apply to the Supreme Court of Arkansas or its designee. Any such application shall be served upon the Supreme Court of Arkansas or its designee, who shall be heard, together with the applicant, on the issue of whether the proposal is necessary in light of the existing provisions of the Code, accords with standards of accuracy, reliability and truthfulness, and would facilitate the process of informed selection of lawyers by potential consumers of legal services. The relief granted in response to any such application shall be promulgated as an amendment to DR 2-101(B), universally applicable to all lawyers.

(D) If the advertisement is communicated to the public over radio or television, it shall be pre-recorded, approved for broadcast by the lawyer and a recording of the actual transmission shall be retained by the lawyer and he shall contract with the radio or television station for the preservation of a recording of the transmission by the station for a period of not less than one year.

(E) If a lawyer advertises a fee for a service, the lawyer and other members of his firm where a firm name or address is used must render that service for no more than the fee advertised.

(F) Unless otherwise specified in the advertisement if a lawyer publishes any fee information authorized under DR 2-101(B) in a publication that is published more frequently than one time per month, the lawyer shall be bound by any representation made therein for a period of not less than 30 days after such publication. If a lawyer publishes any fee information authorized under DR 2-101(B) in a publication that is published once a month or less frequently he shall be bound by any representation made therein until the publication of the succeeding issue. If a lawyer published any fee information authorized under DR 2-101(B) in a publication which has no fixed date for publication of a succeeding issue, the lawyer shall be bound by any representation

made therein for a reasonable period of time after publication but in no event less than one year.

(G) Unless otherwise specified, if a lawyer broadcasts any fee information authorized under DR 2-101(B), the lawyer shall be bound by any representation made therein for a period of not less than 30 days after such broadcast.

(H) This rule does not prohibit limited and dignified identification of a lawyer as a lawyer as well as by name:

(1) In political advertisements when his professional status is germane to the political issue.

(2) In public notices when the name and profession of a lawyer are required or authorized by law or are reasonably pertinent for a purpose other than the attraction of potential clients.

(3) In routine reports and announcements of a bona fide business, civic, professional, or political organization in which he serves as a director or officer.

(4) In and on legal documents prepared by him.

(5) In and on legal textbooks, treatises, and other legal publications, and in dignified advertisements thereof.

(I) A lawyer shall not compensate or give any thing of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item.

13. *Disciplinary Rule 2-102* is amended to read, in its entirety, as follows: Professional Notices, Letterheads, and Offices:

(A) A lawyer or law firm shall not use or participate in

the use of professional cards, professional announcement cards, office signs, letterheads, or similar professional notices or devices, except that the following may be used:

(1) A professional card of a lawyer identifying him by name and as a lawyer, and giving his addresses, telephone numbers, the name of his law firm, and any information permitted under DR 2-105. A professional card of a law firm may also give the names of members and associates. Such cards may be used for identification.

(2) A brief professional announcement card stating new or changed associations or addresses, change of firm name, or similar matters pertaining to the professional offices of a lawyer or law firm, which may be mailed to lawyers, clients, former clients, personal friends, and relatives. It shall not state biographical data except to the extent reasonably necessary to identify the lawyer or to explain the change in his association, but it may state the immediate past position of the lawyer. It may give the names and dates of predecessor firms in a continuing line of succession. It shall not state the nature of the practice except as permitted under DR 2-105.

(3) A sign on or near the door of the office and in the building directory identifying the law office. The sign shall not state the nature of the practice, except as permitted under DR 2-105.

(4) A letterhead of a lawyer identifying him by name and as a lawyer, and giving his addresses, telephone numbers, the name of his law firm, associates and any information permitted under DR 2-105. A letterhead of a law firm may also give the names of members and associates, and names and dates relating to deceased and retired members. A lawyer may be designated "Of Counsel" on a letterhead if he has a continuing

relationship with a lawyer or law firm, other than as a partner or associate. A lawyer or law firm may be designated as "General Counsel" or by similar professional reference on stationery of a client if he or the firm devotes a substantial amount of professional time in the representation of that client. The letterhead of a law firm may give the names and dates of predecessor firms in a continuing line of succession.

(B) A lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm, except that the name of a professional corporation or a professional association may contain "P.C." or "P.A." or similar symbols indicating the nature of the organization, and if otherwise lawful a firm may use as, or continue to include in, its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession. A lawyer who assumes a judicial, legislative, or public executive or administrative post or office shall not permit his name to remain in the name of a law firm or to be used in professional notices of the firm during any significant period in which he is not actively and regularly practicing law as a member of the firm, and during such period other members of the firm shall not use his name in the firm or in professional notices of the firm.

(C) A lawyer shall not hold himself out as having a partnership with one or more other lawyers unless they are in fact partners.

(D) A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed

to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction.

(E) Nothing contained herein shall prohibit a lawyer from using or permitting the use of, in connection with his name, an earned degree or title derived therefrom indicating his training in the law.

14. *Disciplinary Rule 2-103,* is amended to read, in its entirety, as follows: Recommendation of Professional Employment:

(A) A lawyer shall not, except as authorized in DR 2-101(B), recommend employment as a private practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer.

(B) A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client, except that he may pay the usual and reasonable fees or dues charged by any of the organizations listed in DR 2-103 (D).

(C) A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or any other lawyer affiliated with him or his firm, as a private practitioner, except as authorized in DR 2-101, and except that:

(1) He may request referrals from a lawyer referral service operated, sponsored, or approved by a bar association and may pay its fees incident thereto.

(2) He may cooperate with the legal service activities of any of the offices or organizations enumerated in DR 2-103(D)(1) through (4) and may perform legal services for those to whom he was recommended by it to do such work if:

(a) The person to whom the recommendation is made is a member or beneficiary of such office or organization; and

(b) The lawyer remains free to exercise his independent professional judgment on behalf of this client.

(D) A lawyer or his partner or associate or any other lawyer affiliated with him or his firm may be recommended, employed or paid by, or may cooperate with, one of the following offices or organizations that promote the use of his services or those of his partner or associate or any other lawyer affiliated with him or his firm if there is no interference with the exercise of independent professional judgment in behalf of his client:

(1) A legal aid office or public defender office:

(a) Operated or sponsored by a duly accredited law school.

(b) Operated or sponsored by a bona fide non-profit community organization.

(c) Operated or sponsored by a governmental agency.

(d) Operated, sponsored, or approved by a bar association.

(2) A military legal assistance office.

(3) A lawyer referral service operated, sponsored, or approved by a bar association.

(4) Any bona fide organization that recommends, furnishes or pays for legal services to its members or beneficiaries provided the following conditions are satisfied:

(a) Such organization, including any affiliate,

is so organized and operated that no profit is derived by it from the rendition of legal services by lawyers, and that, if the organization is organized for profit, the legal services are not rendered by lawyers employed, directed, supervised or selected by it except in connection with matters where such organization bears ultimate liability of its member or beneficiary.

(b) Neither the lawyer, nor his partner, nor associate, nor any other lawyer affiliated with him or his firm, nor any non-lawyer, shall have initiated or promoted such organization for the primary purpose of providing financial or other benefit to such lawyer, partner, associate or affiliated lawyer.

(c) Such organization is not operated for the purpose of procuring legal work or financial benefit for any lawyer as a private practitioner outside of the legal services program of the organization.

(d) The member or beneficiary to whom the legal services are furnished, and not such organization, is recognized as the client of the lawyer in the matter.

(e) Any member or beneficiary who is entitled to have legal services furnished or paid for by the organization may, if such member or beneficiary so desires, select counsel other than that furnished, selected or approved by the organization for the particular matter involved; and the legal service plan of such organization provides appropriate relief for any member or beneficiary who asserts a claim that representation by counsel furnished, selected or approved would be unethical, improper or inadequate under the circumstances of the matter involved and the

plan provides an appropriate procedure for seeking such relief.

(f) The lawyer does not know or have cause to know that such organization is in violation of applicable laws, rules of court and other legal requirements that govern its legal service operations.

(g) Such organization has filed with the appropriate disciplinary authority at least annually a report with respect to its legal service plan, if any, showing its terms, its schedule ot benefits, its subscription charges, agreements with counsel, and financial results of its legal service activities or, if it has failed to do so, the lawyer does not know or have cause to know of such failure.

(E) A lawyer shall not accept employment when he knows or it is obvious that the person who seeks his services does so as a result of conduct prohibited under this Disciplinary Rule.

15. *Disciplinary Rule 2-104*, is amended to read, in its entirety, as follows: Suggestion of Need of Legal Services:

(A), A lawyer who has given in-person unsolicited advice to a nonlawyer that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except that:

(1) A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client.

(2) A lawyer may accept employment that results from his participation in activities designed to educate nonlawyers to recognize legal problems, to make intelligent selection of

counsel, or to utilize available legal services if such activities are conducted or sponsored by a qualified legal assistance organization.

(3) A lawyer who is recommended, furnished or paid by a qualified legal assistance organization enumerated in DR 2-103(D)(1) through (4) may represent a member or beneficiary thereof, to the extent and under the conditions prescribed therein.

(4) Without affecting his right to accept employment, a lawyer may speak publicly or write for publication on legal topics so long as he does not emphasize his own professional experience or reputation and does not undertake to give individual advice.

(5) If success in asserting rights or defenses of his client and litigation in the nature of a class action is dependent upon the joinder of others, a lawyer may accept, but shall not seek, employment from those contacted for the purpose of obtaining their joinder.

16. *Disciplinary Rule 2-105,* is amended to read, in its entirety, as follows: Limitation of Practice:

(A) A lawyer shall not hold himself out publicly as a specialist or as limiting his practice, except as follows:

(1) A lawyer admitted to practice before the United States Patent and Trademark Office may use the designation "Patents," "Patent Attorney," "Patent Lawyer," or "Registered Patent Attorney" or any combination of those terms, on his letterhead and office sign.

(2) A lawyer who is certified as a specialist in a particular field of law or law practice by the Supreme Court of Arkansas or its designee

may hold himself out as such, but only in accordance with the rules prescribed by that authority.

17. *Disciplinary Rule 2-106,* is amended to read, in its entirety, as follows: Fees for Legal Services:   .

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

18. *Disciplinary Rule 2-107,* is amended to read, in its entirety, as follows: Division of Fees Among Lawyers:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of this law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.

19. *Disciplinary Rule 2-108,* is amended to read, in its entirety, as follows: Agreements Restricting the Practice of a Lawyer:

(A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

(B) In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law.

20. *Disciplinary Rule 2-109,* is amended to read, in its entirety, as follows: Acceptance of Employment:

(A) A lawyer shall not accept employment on behalf of a person if he knows or it is obvious that such person wishes to:

(1) Bring a legal action, conduct a defense, or assert a position in litigation, or otherwise have steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(1) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification, or reversal of existing law.

21. *Disciplinary Rule 2-110,* is amended to read, in its entirety, as follows: Withdrawal from Employment:

(A) In general.

(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.

(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment if:

(1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harrassing or maliciously injuring any person.

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

(4) He is discharged by his client.

(C) Permissive withdrawal.

If DR 2-110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) His client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law.

(b) Personally seeks to pursue an illegal course of conduct.

(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.

(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.

(e) Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules.

(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

(2) His continued employment is likely to result in a violation of a Disciplinary Rule.

(3) His inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal.

(4) His mental or physical condition renders it difficult for him to carry out the employment effectively.

(5) His client knowingly and freely assents to termination of this employment.

(6) He believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

FOGLEMAN, J., concurs.

HOWARD, J., dissents.

JOHN A. FOGLEMAN, Justice, concurring. In *Bates* v. *State Bar of Arizona*, 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977), the United States Supreme Court said:

*** And the special problems of advertising on the electric broadcast media will warrant special consideration. ***

Yet none of the proponents of rules governing advertising by lawyers advises us of any study made by anyone indicating what special consideration should be given television advertising. This court is not in any position to make such a study or arrive at any conclusions on the special considerations warranted without some guidance in the matter. I trust that some such study will be made by someone in the near future and that we will be advised of any recommendations on that subject and the reasons for them.

GEORGE HOWARD, JR., Justice, dissenting. In *Bates v. State Bar of Arizona,* 97 S. Ct. 2691, the United States Supreme Court stated, among other things, as follows:

" [T]he consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue. Moreover, significant societal interests are served by such speech. Advertising, though entirely commercial, may often carry information of import to significant issues of the day. . . . And commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system. . . . In short, such speech serves individual and societal interests in assuring informed and reliable decisionmaking."

In my judgment, the proposal approved by the majority to a degree retards creativity and thus restricts the free flow of truthful information about the availability, nature and fees of attorneys in a setting where the Supreme Court of the United States found that "the middle 70% of our population is not being reached or served adequately by the legal profession." Some of the reasons advanced for this "underutilization of lawyers is fear of the cost, and an inability to locate a suitable lawyer."

The guidelines contained in the majority's proposal are

the standards that lawyers' advertisement must conform to; anything to the contrary must be approved by the Court or its designee. Thus, it is clear that there exists a prior restraint in regards to the exercise of First Amendment rights by lawyers. The Supreme Court has made it clear that commercial speech, as we have here, is entitled to the protection of the First Amendment. However, it is beyond debate that advertising that is false, deceptive, or misleading is subject to restraint and regulation.

In my judgment, the proposal submitted by the office of the Arkansas Attorney General is more flexible and comes to grips with the problem to be remedied, while at the same time not imposing a prior restraint on the exercise of First Amendment rights.

Pertinent parts of the Attorney General's proposal are as follows:

"DR2-101. In all forms of communication with the lay public on matters related to the legal profession or the practice of law, a lawyer shall not knowingly make any statement that is false or misleading, nor shall a lawyer omit to state a fact whose omission would render the communication misleading in whole or in part.

"DR2-102. A lawyer shall not initiate or maintain direct contact with a potential client or clients, personally or through agents or representatives, with a view toward employment, nor shall a lawyer recommend his own employment, or employment of his partners or associates, to a potential client or clients.

"DR2-103. In communication with the lay public a lawyer should avoid laudatory references to his own professional abilities, or those of his partners or associates and may not, in such communication, state or imply that the skill of the lawyer, rather than the merit of the claim, is more determinative of the outcome of litigation.

"DR2-104. In communication with the lay public with a view toward employment a lawyer may:

(a) Indicate one or more fields of law in which the lawyer practices, if accompanied by a statement, when applicable, that the lawyer's practice is not limited to such field or fields and that the mention thereof does not indicate a certification of particular competence by any official entity;

(b) Indicate the no more than two fields of law to which the lawyer's practice is limited, with a statement that such limitation does not represent a certification of particular competence by any official entity;

(c) Indicate those fields of law in which the lawyer has been certified as a specialist by the Supreme Court of Arkansas."

I, therefore, dissent in the majority's approval of the following proposals submitted by the Arkansas Bar Association:

1. Disciplinary Rule 2-101.
2. Disciplinary Rule 2-102.
3. Disciplinary Rule 2-103.
4. Disciplinary Rule 2-104.